Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301



Filed by Appeals
Non-Compliance with
FRAP 4(b)
APR 28 2003
Ft. Lauderdale Clerk's Office

April 24, 2003

RE: 01-15511-GG    USA v. Lidia Ester Ramos
DC DKT NO.: 00-06258 CR-JAG

TO:  Clarence Maddox

CC:  Helen C. Trainor

CC:  Kathleen M. Williams

CC:  Paul M. Rashkind

CC:  Anne R. Schultz

CC:  Carol E. Herman

CC:  Dawn Bowen

CC:  Hon. Lurana S. Snow

CC:  Administrative File



# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

April 24, 2003

Clarence Maddox
Clerk, U.S. District Court
299 E. Broward Blvd
Fort Lauderdale FL 33301



RE: 01-15511-GG     USA v. Lidia Ester Ramos
DC DKT NO.:  00-06258 CR-JAG

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original record on appeal or review, consisting of: six volumes

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1 decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James Delaney (404) 335-6113

Encl.

MDT-1 (8-2002)

# United States Court of Appeals

For the Eleventh Circuit

No. 01-15511

District Court Docket No.
00-06258-CR-JAG



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Mar 26, 2003

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

versus

LIDIA ESTER RAMOS,

   Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.



Entered:      March 26, 2003
For the Court:  Thomas K. Kahn, Clerk
         By:   Alvin, Keturah

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 26, 2003
THOMAS K. KAHN
CLERK
```

```
Filed by Appeals
Non-Compliance with
FRAP 4(b)
APR 28 2003
Ft. Lauderdale Clerk's Office
```

No. 01-15511

D. C. Docket No. 00-06258-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LIDIA ESTER RAMOS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(March 26, 2003)

Before WILSON and RONEY, Circuit Judges, and LIMBAUGH*, District Judge.

PER CURIAM:

Lidia Ester Ramos appeals the concurrent 120-month sentences she received after she was convicted of conspiracy to possess with the intent to distribute

---

*Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

cocaine and possession with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, she argues that the district court erred by (1) failing to declare a mistrial or issue a curative instruction sua sponte after Drug Enforcement Administration (DEA) Special Agent Jonathan Schleffer testified on cross-examination about statements excluded under Federal Rule of Criminal Procedure 11(e)(6); and (2) denying her request for safety valve relief pursuant to U.S.S.G. § 5C1.2(a).[1]

## BACKGROUND

On August 24, 2000, DEA agents arrested Ramos for her role as a courier in a cocaine transaction between two confidential informants and Luis Mello and Hamlet R. Vargas. Before her arrest, the agents observed Ramos and Miguel Salvador drive into the parking lot of a grocery store, where she got into a white Chevrolet Malibu that had been left there by the informants. Ramos then followed Salvador in the Malibu to his sister's home. While Ramos was in the house, the

---

[1] Ramos also argues that the government violated her rights under *Brady v. Maryland*, 373 U.S. 83, 86–87 (1963), by failing to inform her attorney of admissions she made to Special Agents Sean Parry and Schleffer during an interview on September 1, 2000. Although Ramos's attorney admitted at a sidebar conference that he received a facsimile copy of the DEA-6 report summarizing the interview, Ramos contends that Special Agent Schleffer testified regarding admissions that were not included in the DEA-6 report. Although the record clearly indicates that Ramos's attorney and the government disagreed about the correct interpretation of the contents of the DEA-6 report, that does not amount to a *Brady* violation because there was no failure to disclose Ramos's admissions. Thus, Ramos's argument lacks merit.

agents saw Salvador place a large white dog food bag into the trunk of the Malibu. A few minutes later, Ramos got into the Malibu, left the house, and returned by way of a different route to the parking lot. Soon after she returned to the parking lot, Vargas arrived with the two informants in a BMW. The informants took the keys to the Malibu, and Vargas and Ramos drove off in the BMW. A few minutes later, Special Agent Schleffer stopped the BMW and arrested Vargas and Ramos. Other agents stopped the two informants in the Malibu and discovered ten kilograms of cocaine concealed within the dog food bag in the trunk.

Following Ramos's arrest, Detective Rudy Toth interviewed her at the police station. According to Detective Toth, Ramos told him that Salvador asked her to drive a white car to a specific location as a favor to him and that there was only one-half of a kilogram of cocaine in the car. Thereafter, upon the request of Detective Toth, Ramos prepared a written statement, in which she stated that "what [she] didn't know was the amount until the police told [her]."

On September 1, 2000, upon the advice of her attorney, Ramos met with Special Agents Sean Parry and Schleffer for the purpose of determining whether she could provide substantial assistance to the government and therefore negotiate a plea agreement. Although Ramos's attorney consented to the meeting, he was

not present for the interview.[2] After the interview, Special Agent Parry prepared a DEA-6 report, summarizing Ramos's statements, which was provided to Ramos's attorney. Subsequently, Ramos's attorney moved to exclude the statements she made during the interview and the DEA-6 report, which the district court granted as to the government's case-in-chief. It held, however, that such testimony possibly could be offered in rebuttal.

At trial, the government did not elicit testimony about the September 1, 2000 interview from any of its witnesses. During cross-examination, however, Special Agent Schleffer testified that Ramos admitted to him and Special Agent Parry during the September 1, 2000 interview that she knew there was cocaine in the car. In response to Special Agent Schleffer's testimony regarding the interview, Ramos's attorney neither moved for a mistrial nor requested a curative instruction; instead, he continued to question Special Agent Schleffer about statements Ramos made during the interview. Thereafter, the jury convicted Ramos, and she received 120-month concurrent sentences. This appeal followed.

## DISCUSSION

---

[2] We are troubled that Ramos's attorney was not present during the interview with Special Agents Parry and Schleffer. Her attorney certainly was aware of the meeting, having advised Ramos to meet with the agents to discuss a possible plea agreement. Had he been present at the meeting, he would have known what statements his client made to the agents.

I.

Ramos argues that the district court erred by not ordering a mistrial or issuing a curative instruction sua sponte after Special Agent Schleffer testified regarding admissions Ramos made during the September 1, 2000 interview. She contends that "Agent Schleffer blurted out that [she] had made a full confession to him during those plea negotiations." As Ramos neither requested a curative instruction nor moved for a new trial based upon the allegedly inadmissible evidence, we review this issue for plain error. *United States v. Camacho*, 233 F.3d 1308, 1313 (11th Cir. 2000), *cert. denied*, 532 U.S. 951 (2001); *see also United States v. Olano*, 507 U.S. 725, 732 (1993) (holding that plain error is "error that is plain and that affect[s] substantial rights" and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" (alterations in original) (internal quotation marks omitted)).

Assuming arguendo that Ramos's statements to Special Agents Parry and Schleffer were protected by Rule 11(e)(6), she waived that protection when her attorney opened the door for Special Agent Schleffer to testify about the September 1, 2000 interview. Indeed, it is well established that under the doctrine of invited error, "where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute

reversible error." *United States v. Males*, 715 F.2d 568, 571 (11th Cir. 1983) (internal quotation marks omitted).

The record reveals that Special Agent Schleffer's statements on cross-examination were in response to defense counsel's questions about why the agent thought Ramos was engaged in countersurveillance. Special Agent Schleffer initially responded by explaining that Ramos's actions, such as taking a different route and making a u-turn, indicated to him that she was attempting to evade surveillance. Thereafter, defense counsel continued to ask how Special Agent Schleffer knew that Ramos was aware that there was cocaine in the car at the time she drove the vehicle. In response to defense counsel's persistent questions, Special Agent Schleffer disclosed that Ramos admitted during the September 1, 2000 interview that she knew there was cocaine in the car. At that point, instead of immediately requesting a mistrial or curative instruction, defense counsel continued to elicit detailed testimony about Ramos's statements from the interview. Even after an extended sidebar conference to discuss Special Agent Schleffer's testimony, defense counsel continued to question Special Agent Schleffer about the interview.

Were it not for defense counsel's line of questioning, Ramos's statements from the September 1, 2000 interview would not have been disclosed to the jury.

As Special Agent Schleffer's statements were the result of invited error on the part of defense counsel, the district court did not clearly err in failing to grant a mistrial or issue a curative instruction sua sponte.

II.

Ramos also argues that the district court clearly erred by concluding that she was ineligible for safety valve relief under section 5C1.2(a) of the sentencing guidelines. We review the district court's factual determination that Ramos was ineligible for safety valve relief for clear error. *United States v. Camacho*, 261 F.3d 1071, 1073 (11th Cir. 2001).

"[T]o be eligible for the safety valve, a defendant must satisfy the five criteria established in § 5C1.2." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). Although there is no dispute that Ramos satisfied the first four criteria, the district court found that Ramos failed to satisfy the fifth criteria, because she did not demonstrate a good faith attempt to cooperate with the authorities as required under section 5C1.2(a)(5).[3]

---

[3]Section 5C1.2(a)(5) provides that

> the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if . . . not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

The district court concluded that Ramos was ineligible for safety valve relief, because she failed to show that she made a good faith attempt to cooperate with the government by providing complete and truthful information. In her safety valve statement, Ramos acknowledged that she "should have been more careful when [Salvador] asked [her] to do him the favor." Although she conceded her willful ignorance, she did not admit that she knew there was cocaine in the car. Indeed, the majority of her safety valve statement was devoted to explaining her relationship with Salvador and Vargas and expressing regret that they had taken advantage of her. Furthermore, the government pointed out that Ramos's safety valve statement "contradict[ed] what she said before," because, according to the government's witnesses at trial, Ramos admitted that she knew there was cocaine in the car and that she only was mistaken about the amount of cocaine.

As Ramos had the burden of proving to the district court that she qualified for safety valve relief, the district court did not clearly err in concluding that she failed to satisfy the criteria set forth in section 5C1.2(a).

### CONCLUSION

Accordingly, we AFFIRM.

---

U.S.S.G. § 5C1.2(a)(5).

A True Copy Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

8